*E-Filed 12/21/10*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| RAYMOND E. JONES, | No. C 10-0302 RS (PR) |
| Petitioner, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| MATTHEW CATE, | |
| Respondent. | |

## INTRODUCTION

This is a federal habeas corpus action filed by a *pro se* state prisoner pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the petition is DENIED.

## BACKGROUND

In 2004, an Alameda County Superior Court jury found petitioner guilty of first degree murder, personal infliction of corporal injury on the mother of his child, and assault with force likely to produce great bodily injury. Petitioner appealed and was granted relief on direct review on his sentencing claims. After resentencing, petitioner sought, and was denied, relief on direct and collateral state review on his other claims. This federal habeas

action followed.

Evidence presented at trial established that petitioner shot to death Lacey White, the boyfriend of petitioner's ex-girlfiend, Yvette Scott. Petitioner had physically abused Scott during their 14-year relationship, which resulted in numerous interactions with law enforcement, the facts of which were admitted at his trial. A few months before White's murder, Scott had terminated her relationship with petitioner and had started dating White. On September 3, 2002, Scott and White returned from San Francisco and stopped at a market near their apartment. Petitioner approached White to talk to him. White assured petitioner that he would not interfere in petitioner's relationship with his children, and told petitioner he should respect Scott's choice to end the relationship. Petitioner then approached Scott who had been sitting in her car. He accused her of treating him without respect.

Scott and White went to the apartment, and Scott placed a large mirror against the door, apparently to prevent a forced entry. Petitioner kicked in the front door, pushed past Scott, pointed a gun at White, and, after an exchange of words, shot him. Scott heard a second and a third shot as she ran from the house, screaming for help. Petitioner ran after her, and hit her in the face and head with his gun. When the driver of a passing car intervened, petitioner left.

As grounds for federal habeas relief, petitioner alleges that (1) the trial court violated his right to due process by admitting evidence of uncharged crimes; (2) his conviction is constitutionally invalid because one witness was not credible and presented false testimony; (3) the prosecutor violated his right to due process by allowing a witness to give false and inconsistent testimony; (4) defense counsel rendered ineffective assistance in violation of the Sixth Amendment; and (5) there was cumulative error.

**STANDARD OF REVIEW**

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412–13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decision but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id*. at 409.

**DISCUSSION**

**I.    Admission of Evidence of Uncharged Crimes**

Petitioner claims that the trial court violated his right to due process by admitting evidence of uncharged crimes, specifically evidence of petitioner's "prior violence against Yvette Scott." (Pet. at 15.) Petitioner's claim comes in two parts. In the first, petitioner asserts that such evidence was inadmissible propensity evidence, admitted under an unconstitutional state evidence rule. In the second, petitioner alleges that conflicting jury instructions permitted the jury to convict on propensity evidence proven by a preponderance

1  of the evidence. (*Id.*) Petitioner contends that the state rule of evidence under which the
2  alleged propensity evidence was admitted is unconstitutional. (*Id.* at 16.)

3  The state appellate court rejected petitioner's propensity claim. The trial court's
4  instructions, the appellate court held, were sufficient to protect petitioner's rights because the
5  jury was cautioned that the evidence may not be considered to prove that petitioner was a bad
6  person of bad character or that he has a disposition to commit crimes other than those
7  addressed in the domestic violence jury instructions. (Ans., Ex. C at 5.)

8  Petitioner's propensity claim fails. The United States Supreme Court has left open the
9  question of whether admission of propensity evidence violates due process. *Estelle v.
10 McGuire*, 502 U.S. 62, 75 n. 5 (1991). Because the Supreme Court has reserved this issue as
11 an "open question," the Ninth Circuit has held that a petitioner's due process right
12 concerning the admission of propensity evidence is not clearly established for purposes of
13 review under AEDPA.[1] *Alberni v. McDaniel*, 458 F.3d 860, 866–67 (9th Cir. 2006). As the
14 use of propensity evidence has not been shown to be unconstitutional, petitioner's
15 contentions regarding the constitutionality of the California evidence code are moot.

16 The second part of petitioner's claim — that the trial court, by giving the jury CALJIC
17 2.50.02 ("Evidence of Other Domestic Violence"), allowed the jurors to find guilt based on a
18 preponderance of the evidence, rather than on proof beyond a reasonable doubt — is without
19 merit. The state appellate court disposed of this claim on state law grounds. (Ans., Ex. C at
20 6.)

---

[1] Petitioner contends that AEDPA is inapplicable to this claim because the state appellate court never adjudicated the merits of his constitutional due process claim. (Pet. at 23–24.) The record does not support petitioner's reading of the state appellate opinion. The first line of the opinion states that petitioner contends that he was "deprived of a fair trial" because of the admission of the evidence at issue. The right to a fair trial is guaranteed to criminal defendants under the Due Process Clause. *In re Murchison*, 349 U.S. 133, 136 (1955). As the state appellate court addressed whether petitioner received a fair trial, they necessarily addressed petitioner's due process claim.

CALJIC No. 2.50.02, as given to petitioner's jury, reads:

> Evidence has been introduced for the purpose of showing that [petitioner] engaged in an offense involving domestic violence other than that charged in the case.
>
> . . . .
>
> If you find that [petitioner] committed a prior offense involving domestic violence, you may, but are not required to, infer that [petitioner] had a disposition to commit other offenses involving domestic violence. If you find that [petitioner] had this disposition, you may, but are not required to, infer that he was likely to commit and did commit the crime of which he is accused involving domestic violence.
>
> However, if you find by a preponderance of the evidence that [petitioner] committed a prior crime or crimes involving domestic violence, that is not sufficient by itself to prove beyond a reasonable doubt that he committed the charged offenses involving domestic violence. If you determine an inference can properly be drawn from this evidence, this inference is simply one item for you to consider, along with all other evidence, in determining whether [petitioner] has been proved guilty beyond a reasonable doubt of the charged crime involving domestic violence.

(Ans., Ex. A, Vol. 3 at 479.)

To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the disputed instruction by itself so infected the entire trial that the resulting conviction violates due process. *See Estelle v. McGuire*, 502 U.S. at 72. The instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. *Id.* In other words, a federal habeas court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process. *United States v. Frady*, 456 U.S. 152, 169 (1982) (citing *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)). It is important to note that the Due Process Clause of the Fourteenth Amendment protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he or she is charged. *In re Winship*, 397 U.S. 358, 364 (1970).

Petitioner contends that the instruction contains conflicting language about the prosecution's burden of proof. At one point, the instruction states that if the jury finds that petitioner committed a prior crime of domestic violence, it may infer that petitioner had the

1 disposition to commit the charged offense, and, then, infer that petitioner did commit the
2 crime. Petitioner asserts that because the fact that petitioner committed prior bad acts need
3 only be proved by a preponderance of the evidence, the instruction would allow the jury to
4 convict him under a preponderance standard, which is less than the constitutionally required
5 beyond a reasonable doubt standard. Petitioner asserts this despite the language that appears
6 immediately thereafter: "However, if you find by a preponderance of the evidence that
7 [petitioner] committed a prior crime or crimes involving domestic violence, that is not
8 sufficient by itself to prove beyond a reasonable doubt that he committed the charged offense
9 involving domestic violence."

10 The instruction goes on to say that the prior crimes evidence is "simply one item for
11 you to consider along with all the other evidence" in the jury's determination whether
12 petitioner has been proved guilty beyond a reasonable doubt of the charged crime involving
13 domestic violence. Despite this prophylactic language, and the other instructions given
14 regarding reasonable doubt, petitioner contends that the jury would not have known which
15 standard of proof to use, and the possibility that it used the lesser standard is sufficient for
16 this Court to grant him habeas relief as to this claim. Petitioner relies on *Gibson v. Ortiz*, 387
17 F.3d 812 (9th Cir. 2004), an opinion which discussed jury instructions regarding the standard
18 of proof in the jury's consideration of prior bad acts. In *Gibson*, the Ninth Circuit concluded
19 that two jury instructions, when given in tandem, impermissibly lowered the standard of
20 proof for the permissive inference to be drawn from the uncharged acts, and granted habeas
21 relief because such a lowering of the burden of proof was structural error. *Id.* at 823–25.

22 *Byrd v. Lewis*, 566 F.3d 855 (9th Cir. 2009), overruled *Gibson*. In *Byrd*, the Ninth
23 Circuit concluded that "the instructional error affected only the theory resting on the
24 inference of the prior charged acts," and, drawing authority from Supreme Court precedent,
25 went on to state that an instructional error arising in the context of multiple theories of guilt
26 does not vitiate all the jury's findings. *Id.* at 866. "[Gibson's] jury could have convicted
27 Gibson on the theory that the inference from the prior uncharged acts warranted a finding of

1 guilt, or it could have convicted Gibson on the theory that the direct testimony of the victim
2 regarding the charged offenses warranted a finding of guilt, or on some combination of the
3 two theories." *Id.* The Ninth Circuit concluded that the instructional error was harmless
4 rather than structural, basing its decision in part on the fact that an effective overarching
5 reasonable doubt instruction had been given by the *Gibson* trial court. *Id.* at 867–68.

Petitioner's claim, under *Byrd*, fails. Not only did the disputed instruction itself correct any misapprehension about the proper standard to be used (including that the prior acts evidence was but one piece to be considered in the final determination of whether petitioner was guilty beyond a reasonable doubt), but the trial court gave an overarching reasonable doubt instruction (Ans., Ex. A, Vol. 3 at 469), and a further warning regarding the use of the uncharged crimes evidence: "If you find other crimes were committed by a preponderance of the evidence, you are nevertheless cautioned and reminded that before [petitioner] can be found guilty of any crime charged or included crime in this trial, the evidence as a whole must persuade you beyond a reasonable doubt that [petitioner] is guilty of that crime." (*Id.* at 480.) Because the instructions required the jury to find petitioner guilty of the charged offenses only if it was persuaded that the evidence presented showed that he was guilty beyond a reasonable doubt, even if an error occurred, such error was harmless, and petitioner suffered no prejudice. This claim is therefore DENIED.

## II. Testimony of a Witness

Petitioner claims that his conviction is invalid because a witness, William Burke, an Oakland police officer, was not credible and presented false testimony. (Pet. at 33.) Petitioner bases his claim on two alleged discrepancies in Burke's testimony.[2] The first alleged discrepancy occurred when Burke, who had been called to the crime scene to investigate, testified at trial that homicide investigators had told him a witness, Jevon

---

[2] Petitioner also alleges that there are "further discrepancies" between Burke's account of events and those of another officer on the scene, William Bacon. (Pet. at 33.) As petitioner has not identified the specific discrepancies, the Court cannot assess the merits of his contention.

Russell, lied about his name. (*Id.*) At the preliminary hearing, Burke testified that Russell had lied to him about his name but did not mention homicide investigators being involved. (*Id.*) The second alleged instance occurred when Burke testified that he obtained a photograph of Russell via police computers because a felony warrant for Russell had been issued and yet there was no evidence that Russell was detained pursuant to that warrant — the implication being that if there is no evidence that Russell was detained pursuant to the warrant, there was in fact no warrant, and therefore Burke lied about seeing Russell's photograph.

As to the first instance, a review of the record shows that there is no discrepancy. It appears that Russell gave a false name to Burke, and that Burke had also heard from homicide investigators that Russell had given a false name. There is nothing contradictory, false, or misleading about these statements, even though they may contain different degrees of detail. As to the second alleged instance, no inconsistency arises in Burke's testimony that he obtained a photograph of Russell owing to his felony warrant, where no evidence was presented that Russell was actually arrested. Whether Russell was arrested pursuant to a warrant is unknown, and any assertions based on this absence of evidence is pure speculation.

Petitioner attempts to support his assertions about Burke by appending an Oakland Tribune article which details the 2009 firing of four officers from the Oakland police force — one of whom is a person named William Burke — who were accused of falsifying sworn affidavits. (Trav., Ex. A.) Even assuming that the officer fired is the same person who testified at petitioner's trial, the claim cannot succeed. First, the article details accusations, not proved facts, and therefore are insufficient to support petitioner's claim. Second, even if the accusations described in the article had been proved to be true, petitioner has not shown that Burke gave false testimony at petitioner's trial just because he may have given false statements in unrelated affidavits.

Furthermore, even if Burke was not credible, petitioner has not shown that he was prejudiced by Burke's testimony. Scott provided eyewitness testimony as to the central events, testimony corroborated by physical evidence obtained from the crime scene, and by the testimony of witnesses who heard the gunshots. Accordingly, petitioner's claim is DENIED.

### III.  Alleged Prosecutorial Misconduct

Petitioner claims that the prosecutor committed misconduct by allowing Scott to give testimony that was false, as evidenced by inconsistencies in her in-court statements. (Pet. at 36.) The state appellate court rejected this idea, finding that:

> The inconsistencies cited by [petitioner] were of relatively little consequence, involving such details as why Scott and White had returned to the apartment, why the mirror behind the door had not been knocked over when [petitioner] forced his way in, how far inside the apartment [petitioner] had been when he started firing, whether Scott could see White when the second shot was fired, how far down the street she ran before being overtaken by [petitioner], and whether she called a friend before being transported to the hospital or only after she had arrived there.

(Ans., Ex. C at 5 n.7.) The other instances include Scott's statements regarding her pregnancy, and whether she could have heard Jones speak to White. (Pet. at 37.)

When a prosecutor obtains a conviction by the use of testimony which he knows or should know is perjured, such conviction must be set aside if there is any reasonable likelihood that the testimony could have affected the judgment of the jury. *United States v. Agurs*, 427 U.S. 97, 103 (1976). To prevail on such a claim a petitioner must show that (1) the testimony (or evidence) was actually false, (2) the prosecution knew or should have known that the testimony was actually false, and (3) that the false testimony was material. *United States v. Zuno-Arce*, 339 F.3d 886, 889 (9th Cir. 2003)

Petitioner's claim is flawed for two reasons. First, he has not shown that the prosecutor knew or should have known that testimony was perjured. His assertion that the prosecutor's knowledge that Scott was hostile to petitioner, and that it was "obvious" that Scott was lying, is simply not sufficient. Scott's hostility by itself would not warrant a

1 conclusion by the prosecutor that the witness was lying. Second, petitioner has not alleged or
2 shown that any of the alleged inconsistencies were material to the central events to which
3 Scott testified. Accordingly, the claim is DENIED.

### IV.   Assistance of Counsel

Petitioner claims that defense counsel rendered ineffective assistance when he failed to (1) investigate the veracity of Scott's statement regarding his having heard petitioner's conversation with White; (2) investigate the veracity of Scott's statement regarding property petitioner allegedly ran through; and (3) inform the jury that a prosecution witness, Felite Fountain, had a prior conviction for perjury.[3] (Pet. at 40.) The state appellate court did not address this claim in its written opinion.

Claims of ineffective assistance of counsel are examined under *Strickland v. Washington*, 466 U.S. 668 (1984). In order to prevail on a claim of ineffectiveness of counsel, a petitioner must establish (1) that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms, *id.* at 687–68, and (2) that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* Where the defendant is challenging his conviction, the appropriate question is "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

Petitioner's claim is deficient because he has not established prejudice by any instance of allegedly deficient performance by defense counsel. None of the instances identified take

---

[3] Fountain's possible prejudices were laid before the jury, including that the victim was her husband's cousin, and that she was a longtime friend of Scott. (Ans., Ex. B, Vol. 6 at 1014–15.) Fountain testified only to her observations of the relationship between Scott and petitioner. (*Id.* at 1016–26.) She did not observe the criminal events and certainly did not offer any evidence regarding them. Furthermore, other than petitioner's assertion, there is no evidence in the record before the Court that Fountain had been convicted of committing perjury.

away from the powerful eyewitness testimony provided by Scott as to the conduct of petitioner. Accordingly, the claim is DENIED.

**V.  Cumulative Error**

Petitioner claims that his conviction is invalid because the totality of trial errors deprived him of a fair trial. (Pet. at 43.) Although no single trial error is sufficiently prejudicial to warrant the granting of relief, the cumulative effect of several errors may still prejudice a defendant so much that his conviction must be overturned. *See Alcala v. Woodford*, 334 F.3d 862, 893–95 (9th Cir. 2003). Where no single constitutional error exists, however, there can be no cumulative error. *See Mancuso v. Olivarez*, 292 F.3d 939, 957 (9th Cir. 2002). Other than the possible harmless error created by the jury instructions, petitioner has not shown that there were any constitutional errors at trial, and therefore he has similarly not shown cumulative error. Accordingly, petitioner's claim is DENIED.

**CONCLUSION**

The state court's adjudication of the claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, the petition is DENIED.

A certificate of appealability will not issue. Reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner may seek a certificate of appealability from the Court of Appeals. The Clerk shall enter judgment in favor of respondent and close the file.

**IT IS SO ORDERED.**

DATED: December 20, 2010

RICHARD SEEBORG
United States District Judge